## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PATRICIA HOPKINS | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:11-CV-1639 (JCH) |
| | : | |
| v. | : | |
| | : | |
| NEW ENGLAND HEALTH CARE | : | NOVEMBER 25, 2013 |
| EMPLOYEES WELFARE FUND AND | : | |
| NEW ENGLAND HEALTH CARE | : | |
| EMPLOYEES PENSION FUND, | : | |
| Defendants. | : | |

### RULING RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 59)

## I.    INTRODUCTION

Plaintiff Patricia Hopkins ("Hopkins") originally brought this claim against New England Health Care Employees Welfare Fund and New England Health Care Employees Pension Fund (collectively, the "Funds"). The Complaint (Doc. No. 1) alleges two counts. Count 1 alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended by the Civil Rights Act of 1991 ("Title VII"); the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq. ("ADEA"); the Americans with Disabilities Act, 42 U.S.C. § 12111 et seq. ("ADA"); the Rehabilitation Act of 1973, § 2 et seq., 29 U.S.C. §701 et seq. ("Rehabilitation Act"); and the corresponding provisions of the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60 et seq. ("CFEPA"). Count 2 alleges intentional infliction of emotional distress under state common law.

For the following reasons, the court grants in part and denies in part the Motion for Summary Judgment.

## II.    STANDARD OF REVIEW

A motion for summary judgment may be granted only where there are no issues of material fact in dispute and the moving party is therefore entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(a); In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009).  The moving party may satisfy his burden "by showing—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation citations and marks omitted).  Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  In order to defeat the motion for summary judgment, he must present such evidence as would allow a jury to find in his favor.  Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).  Merely verifying the conclusory allegations of the complaint in an affidavit, however, is insufficient to oppose a motion for summary judgment.  Zigmund v. Foster, 106 F. Supp. 2d 352, 356 (D. Conn. 2000) (citing cases).

When reviewing the record, the court resolves all ambiguities and draws all permissible factual inferences in favor of the party against whom summary judgment is sought.  Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).  If there is any evidence in the record on a material issue from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is inappropriate.  Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).  However, the existence of a mere "scintilla" of evidence supporting the plaintiff's position is insufficient to defeat a motion for summary judgment.  Harvey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir. 2008).

In regards to the discrimination portions of this case, the Second Circuit instructs that, "where intent and state of mind are in dispute, summary judgment is ordinarily inappropriate." Carlton v. Mystic Transp. Inc., 202 F.3d 129, 134 (2d Cir. 2000); see Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1224; Montana v. First Fed. Sav. & Loan Ass'n, 869 F.2d 100, 103 (2d Cir. 189); Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985).  They further instruct that "a trial court should exercise caution when granting summary judgment to an employer where, as here, its intent is a genuine factual issue." Carlton, 202 F.3d 129, 134.

## III.   STATEMENT OF FACTS

The Funds, located in Hartford, Connecticut, provide healthcare and pension benefits to active and retired union healthcare workers and their eligible dependents. Defendants' Local Rule 56(a)(1) Statement ("Defs.' L.R. 56(a)(1) Stmt.") at ¶ 1.

Hopkins was employed by the Funds from 1989 until June 18, 2010.  Id. at ¶ 4. Hopkins was employed as an Assistant Director of operations during her time with the Funds.  Id.  Although the parties dispute Hopkins' job duties, the parties agree that those duties included handling issues with claims and dealing with the software company that provided the Funds' software.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 5; Plaintiff's Local Rule 56 (a)(2) ("Pl.'s L.R. 56(a)(2) Stmt.") at ¶ 5.  The Funds also employed Christine Pane ("Pane") from 2000 until June 3, 2011.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 6. Pane was Hopkins' supervisor from January 2008, until Hopkins was terminated on June 18, 2010.  Pl.'s L.R. 56(a)(2) Stmt. at ¶ 7.

During 2008 and 2009, Hopkins was granted approximately 38 weeks of paid time off and paid disability leave in order to receive treatment for breast cancer.  Id. at ¶ 9.  Hopkins returned to work in September 2008, and finished her cancer treatments in

3

June 2009.  Id. at ¶ 10.  Hopkins claims that, upon her return, Pane began referring to her as "chemo brain."  Id. at ¶ 11.

Subsequent to her return, communications began between the parties about Hopkins' potential retirement, although the parties dispute who began these talks and the nature of these talks.  Defs.' L.R. 56(a)(1) Stmt. at ¶¶ 13-16; Pl.'s L.R. 56(a)(2) Stmt. at ¶¶ 13-16.  The parties do agree that Hopkins expressed to the Funds that she was thinking of retiring in 2010.  Id.; Pl.'s L.R. 56(a)(2) Stmt. at 13.  The Funds claim that Hopkins indicated that she planned on retiring in 2010, and as a result of this hired Carol Tardif ("Tardif") to be Hopkins' replacement.  Id. at ¶¶ 16-18.  Although Hopkins denies that she expressed a plan to retire, or that Tardif was hired as her replacement, she does not dispute that Tardif was hired on January 11, 2010.  Pl.'s L.R. 56(a)(2) Stmt. at ¶¶ 16-18.

Hopkins alleges that her comment about thinking about retiring was made after a period of time during which Pane repeatedly asked her about when she would be retiring, a claim that the Funds deny.[1]  Id. at 13.  Hopkins further claims that Pane's questioning rose to the level of "badgering" and, despite Pane's representations to the opposite, Pane continued to pressure Hopkins about retirement and told other Funds employees that Hopkins planned on retiring in 2010.  Id. at 14.[2]  Pane allegedly sent a letter to the Funds' attorney, John Creane ("Creane"), stating that Pane would be retiring in 2010.  Id. at 13.  Hopkins also asserts that Pane, and the director Pane

---

[1] Hopkins alleges that she told Pane, "out of frustration," that she would give three months' notice if she planned on retiring. Pl.'s L.R. 56 (a)(2) Stmt. at 13.

[2] Hopkins alleges that, at a Christmas party, Pane told a former supervisor of Hopkins that Hopkins was planning on retiring.  Pl.'s L.R. 56(a)(2) Stmt. at 14.

replaced, described Hopkins as the Funds "institutional memory." Id. at 15. She further notes numerous references to her "many, many" years of service. Id.

Hopkins also claims that Pane made negative comments regarding Hopkins' work performance in relation to her cancer treatments. Id. at 14. These comments apparently began when Pane complained about Hopkins' absence due to medical leave. Id. at 15. Hopkins also alleges that Pane stated to Laurel Burch-Minakan ("Burch-Minakan") that Hopkins was not functioning as well after her returning from illness. Id. Pane allegedly made negative comments to other employees about Hopkins' breast cancer and ability to complete reports when not at work for medical reasons. Id. at 16.

Both parties agree that numerous problems existed in the management of certain claims and systems that the Funds employed. Defs.' L.R. 56(a)(1) Stmt. at ¶¶ 19-25; Pl.'s L.R. 56(a)(2) Stmt. at ¶¶ 19-25.[3] The Funds blame Hopkins for many of these issues, but Hopkins denies that she was responsible for any of the problems, and alleges that her job did not include dealing with many of the proposed defects. Id. These issues included problems with per diem claims, claims for multiple services related to a single procedure that were billed at a single fixed rate. Def.'s L.R. 56(a)(1)Stmt. at ¶ 23. Hopkins claims that she addressed these issues by meeting with a representative from BASYS (the Funds' software vendor) and Pane in order to come up with a solution to the problem. Pl.'s L.R. 56(a)(2) Stmt. at ¶¶ 23, 25.

---

[3] These issues included problems processing benefit claims, a backlog for Anthem aged-inventory claims, defective administration of BASYS software (Welfare Fund's software vendor), incorrect processing of "per diem bundled claims," and numerous instances of improper payment of benefits. Defs.' L.R. 56(a)(1) Stmt. at ¶¶ 19-25.

In March 2010, Hopkins and Pane met to discuss the problems with the claims. Def.'s L.R. 56(a)(1) Stmt. at ¶ 26; Pl.'s L.R. 56(a)(2) Stmt. at ¶ 26.  Hopkins claims that, as a result of a bad audit report, Pane told her that she was going to make Hopkins the "fall guy" and that Hopkins would be terminated.[4] Pl.'s L.R. 56(a)(2) Stmt. at ¶ 26. Hopkins further claims that, after this meeting, Pane told Burch-Minakan that Pane intended to fire Hopkins.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 30; Pl.'s L.R. 56(a)(2) at ¶¶ 26, 30.

Following this discussion, and Burch-Minakan's speaking to Hopkins, both Hopkins and Burch-Minakan attended a meeting of the Board of Trustees of the Welfare Fund.  Defs.' L.R. 56(a)(1)Stmt. at ¶ 38; Pl.'s L.R. 56(a)(2) Stmt. at ¶ 38.  At the meeting, Burch-Minakan stood up and informed the Board that she had contacted a lawyer and that, if she or Hopkins were terminated, there might be a wrongful termination lawsuit.  Defs.' L.R. 56(a)(1)Stmt. at ¶ 39; Pl.'s L.R. 56(a)(2) Stmt. at ¶ 39. She also stated that, "[w]e are being fired to stop a proper investigation and we are asking you to conduct a proper investigation to avoid a wrongful termination suit and violation of your fiduciary duties."  Id.  The Trustees told Burch-Minakan that she was out of order and, after meeting in executive session, the Board told Burch-Minakan that the meeting was for Fund business only and that she should proceed through the proper channels with her complaint.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 40; Pl.'s L.R. 56(a)(2) Stmt. at ¶ 40.

Immediately following the Board meeting, Hopkins and Burch-Minakan were placed on paid administrative leave pending an investigation by the Funds.  Id.  On

---

[4] Hopkins also asserts that she had argued for a claims audit to be done on numerous occasions, but Pane refused the requests.  Pl.'s L.R. 56(a)(2) Stmt. at ¶57.

March 30, 2010, Hopkins met with Creane, who indicated that, while Hopkins could not return to work, if she agreed to retire she would be paid until an effective retire date of June 30, 2010.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 44; Pl.'s L.R. 56(a)(2) Stmt. at ¶ 44. Hopkins did not accept this proposal.  Id. at ¶ 46; Pl.'s L.R. 56(a)(2) Stmt. at ¶ 46.  On May 10, 2010, Hopkins met with Pane, Tardif, and another employee of the Funds, who again offered Hopkins the chance to retire rather than face termination, an offer Hopkins again refused.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 47; Pl.'s L.R. 56(a)(2) Stmt. at ¶ 47.

On May 24, 2010, Pane wrote to Hopkins informing her that the Funds were considering her termination and laid out nine areas of concern.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 49; Pl.'s L.R. 56(a)(2) Stmt. at ¶ 49.  Pane also indicated that a hearing had been scheduled for May 28, 2010, at which Hopkins could contest the allegations in the letter.  Id.  Hopkins did not attend this hearing.  Pl.'s L.R. 56(a)(2) Stmt. at ¶ 50.  After Hopkins did not respond to further attempts to reschedule the hearing, on June 18, 2010, Pane wrote to Hopkins informing Hopkins that she was terminated for deficient performance based on the allegations in the May 24, 2010 letter and for insubordination for refusing to attend the May 28, 2010 hearing.  Defs.' L.R. 56(a)(1) Stmt. at ¶¶ 51-52, 54; Pl.'s L.R. 56(a)(2) Stmt. at ¶¶ 51-52, 54.  Subsequent to Hopkins' termination, the Funds had an audit performed, which audit indicated that there were claims processing errors.  Defs.' L.R. 56(a)(1) Stmt. at ¶¶ 57-58; Pl.'s L.R. 56(a)(2) Stmt. at ¶¶ 57-58.

## IV.   DISCUSSION

### A.   Title VII

The Funds argue that they are entitled to summary judgment on Hopkins' claims under Title VII.  For the reasons that follow, the court grants the Funds' Motion for Summary Judgment as to Hopkins' claims under Title VII.

1.      Discrimination Under Title VII

Title VII makes it "an unlawful employment practice for an employer . . . to discharge . . . or discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).  In order to proceed on a claim under Title VII, a plaintiff must make out a prima facie case.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Here, Hopkins has made no claim that she was discriminated against based on her "race, color, religion, sex, or national origin."  In fact, she admits that the Funds did not discriminate against her based on her race, color, religion, sex, or national origin.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 62; Pl.'s L.R. 56(a)(2) Stmt. at ¶ 62.

Therefore, the court grants the Funds' Motion for Summary Judgment as to Hopkins' claim of discrimination under Title VII.

2.      Retaliation Under Title VII

Title VII also makes it unlawful for an employer to retaliate against an employee who complains about prohibited employment discrimination.  Title VII mandates that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]."  Cifra v. G.E. Co., 252 F.3d 205, 216 (2d Cir. 2001), (citing 42 U.S.C. § 2000e-3(a)).

To defeat a motion for summary judgment, a plaintiff alleging retaliation must first offer sufficient evidence to make out a prima facie case.  The evidence must be sufficient to persuade the trier of fact that she "engaged in protected participation or opposition under Title VII, that the employer was aware of this activity, that the employer took adverse action against the plaintiff, and that a causal connection exists between

8

the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action."  Id. (quoting Sumner v. United States Postal Service, 899 F.2d 203, 208-09 (2d Cir. 1990)).

In order to establish that she "engaged in protected participation or opposition under Title VII," Hopkins would need to have evidence that she faced discrimination under Title VII.  Because Hopkins has admitted that she was not discriminated against on any basis recognized under Title VII, even if the Funds retaliated against her, it could not have been because of any action that she took under Title VII.

Therefore, the court grants the Funds' Motion for Summary Judgment as it relates to Hopkins' claim of retaliation under Title VII.

B.      Rehabilitation Act

The Funds also seek summary judgment on Hopkins' cause of action under the Rehabilitation Act.  In order to establish a prima facie case of discriminatory termination that violates the Rehabilitation Act, a plaintiff must show: "(1) that the plaintiff is handicapped within the meaning of the Act; (2) that the plaintiff is otherwise qualified to perform the job; (3) that the plaintiff was discharged because of his or her handicap; and (4) that the employer is a recipient of federal financial assistance."  Kinsella v. Rumsfeld, 320 F.3d 309, 314 (2d Cir. 2003).  Whether Hopkins has come forward with sufficient evidence to create a material issue of fact as to elements one through three is immaterial, because she has not come forward with sufficient evidence as to the fourth element: "the employer is a recipient of federal financial assistance."  Hopkins has neither alleged any facts, nor come forward with any evidence, that the Funds received federal financial assistance.  Indeed, Hopkins admits that the Funds do not receive

federal financial assistance.[5]  Defs.' L.R. 56(a)(1) Stmt. at ¶ 63; Pl.'s L.R. 56(a)(2) Stmt.
at ¶ 63.

As such, Hopkins will be unable to make out a prima facie case of discrimination
under the Rehabilitation Act.  Therefore, the court grants summary judgment for the
Funds on Hopkins' claim under the Rehabilitation Act.

C.    Americans with Disabilities Act

The Funds also move for summary judgment on Hopkins' claims under the
Americans with Disabilities Act.  Hopkins has alleged both discrimination and retaliation
under the ADA.  For the following reasons, the court denies the Motion for Summary
Judgment as it relates to Hopkins claims under the ADA.

1.    Discrimination Under the ADA

Title I of the ADA makes it unlawful for an employer to "discriminate against a
qualified individual on the basis of disability in regard[s] to" any employment decision.
See, 42 U.S.C. §12112(a).  A claim brought under the ADA follows the familiar burden-
shifting framework of Title VII cases: "A plaintiff must establish a prima facie case; the
employer must offer through the introduction of admissible evidence a legitimate non-
discriminatory reason for the discharge; and the plaintiff must then produce evidence
and carry the burden of persuasion that the proffered reason is a pretext."  McBride v.
BIC Consumer Products Mfg. Co., Inc., 583 F.3d 92, 96 (2d Cir. 2009) (quoting Sista v.
CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d. Cir. 2006)).

---

[5] At oral argument, Hopkins' attorney admitted to abandoning this claim because the Funds had
not received federal financial assistance.

a.      Prima Facie Case

In order to make out a prima facie case under the ADA, a plaintiff must show that: "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." Giordano v. City of New York, 274 F.3d 740, 747 (2d Cir. 2001) (quoting Heyman v. Queens Vill. Comm. For Mental Health, 198 F. 3d 68, 72 (2d. Cir. 1999)).  The Second Circuit has instructed that, "[t]o make out a prima facie case is not a demanding burden." Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 52 (2d Cir. 1998).  For the following reasons, Hopkins has met this burden and thus made out a prima facie case of discrimination under the ADA.

First, it is clear from the facts that the Funds are an employer subject to the ADA. The Funds are "engaged in an industry affecting commerce," and they employ "15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year."  42 U.S.C. § 12111(5)(A).  Hopkins alleges in her Complaint that the Funds employ at least twenty-two workers, and an Affidavit provided by the Funds confirms this fact.  See Pl. Compl. ¶ 4. (Doc. No. 1); Creane Aff. at ¶ 6. (Doc. No. 62).

Second, the parties are in agreement that Hopkins was disabled at the time of her termination.  "To establish a prima facie case under either the ADA or the CFEPA, Plaintiff must have been disabled at the time of her termination . . . . The Funds assume, for purposes of summary judgment only, that Plaintiff satisfies this requirement."  Def. Mem. at 19 (Doc. No. 60).

11

Third, Hopkins has come forward with sufficient evidence to assert that she is qualified to perform the essential functions of her job. "The plaintiff was functioning as well after her illness as she had prior to her illness." Pl.'s L.R. 56(a)(2) Stmt. at 16; see Hopkins Dep. at 73, 75. These facts are sufficient to satisfy the low burden at this stage.

Finally, Hopkins has come forward with sufficient evidence to show that she suffered an adverse employment action because of her disability. Hopkins was terminated on June 18, 2010, which is clearly an adverse employment action. See e.g. Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999) (defining adverse action to include "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand"). She has claimed that this firing was due to her disability. "Pane engaged in this behavior to make good on her threat to terminate the plaintiff, and make it appear that it was for legitimate reason[s] when it was in fact due to the plaintiff's . . . disability." Pl.'s L.R. 56(a)(2) Stmt. at 16; see Hopkins Dep. at 174; Pl.'s Second Supplemental Interrog. Resp. at 5. Hopkins has also come forward with evidence that Pane referred to her as "chemo brain," and that Pane made disparaging comments about Hopkins' breast cancer. Pl.'s L.R. 56(a)(2) Stmt. at 16. This is sufficient evidence to establish that Hopkins was fired because of her disability.

b.    Legitimate Non-Discriminatory Purpose

Once a plaintiff has come forward at the summary judgment stage with sufficient evidence to show a prima facie case, "it creates a presumption that the employer discriminated against the employee in an unlawful manner." Greenway, 143 F.3d at 52. At this point, "the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge." McBride, 583 F.3d at 96. "The

12

defendant's burden also is light.  The employer need not persuade the court that it was motivated by the reason it provides; rather, it must simply articulate an explanation that, if true, would connote lawful behavior."  Greenway, 143 F.3d at 52.

The Funds have offered evidence that they terminated Hopkins for poor performance rather than for a discriminatory reason.  In the letter Pane sent to Hopkins, Pane detailed nine areas of concern with regards to Hopkins' performance.  These reasons included, inter alia, incorrect calculations and overpayment of per diem claims, failure to maintain computer systems, failure to adequately train staff, improper processing of claims, and processing personal and family members' claims in violation of Funds policy.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 49.  The evidence supporting these reasons, in light of the low burden of production, is enough for the court to conclude that the Funds have an explanation for the termination that "connotes lawful behavior."  As such, the "ultimate burden then rests on the plaintiff to persuade the fact finder that the employer's proffered explanation is merely a pretext for its intentional discrimination." Greenway, 143 F.3d 47, 52.

c.    Pretext

In this case, the evidence that Hopkins used to establish a prima facie case is also relevant to raise a general issue of material fact as to whether the Funds' proffered reasons for terminating her employment were pretextual.  Further, Hopkins has alleged, in her deposition as well as in interrogatories, that the reasons given by the Funds are pre-textual.  She has come forward with evidence that, before the March 2010 Trustees meeting, Pane told her that Pane would make her "the fall guy" for a bad audit report. Pl.'s L.R. 56(a)(2) Stmt. at ¶ 26.  She also has evidence that she did not have direct supervisory authority over any employee and, as such, could not be responsible for any

issues caused by any other employees.  Id. at 18.  She further claims that she made Pane aware of problems that were attributed to her, but that nothing was done about them.  Id. at 18-19.  Finally, she asserts that she was not given the assistance needed to address the problems that she had identified.  Id. at 18.  This evidence, taken together, is sufficient to raise a genuine issue of material fact with respect to discriminatory animus.

This case is in many ways a classic he-said/she-said one, which involves an assessment of the credibility of witnesses and the resolution of competing inferences that can be drawn from disputed facts.  Such cases are not appropriate for a court to decide on summary judgment.  Accordingly, summary judgment as to the claim of discrimination under the ADA is denied.  See Rodriguez v. City of N.Y., 72 F.3d 1051, 1061 (2d Cir. 1995) ("On a summary judgment motion, the court is not to weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact.").

### 2.    Retaliation Under the ADA

Similar to claims for discrimination, "[c]laims for retaliation [under the ADA] are analyzed under the same burden-shifting framework established for Title VII cases." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002).

### a.    Prima Facie Case

In establishing a prima facie claim of retaliation under the ADA, the elements require that, "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff, and (iv) a causal connection exists between the protected activity and the adverse action."  Weixel v. board of Educ. Of City of New

York, 287 F.3d 138, 148 (2d Cir. 2002) (citing Weissman v. Dawn Joy Fashions, Inc., 214 F.3d 224, 234 (2d Cir.2000)).

Hopkins has come forward with sufficient evidence to establish a prima facie case of retaliation.  Hopkins, along with Burch-Minakan, complained at a Trustee's meeting about their perceived claims of discrimination.  Pl.'s L.R. 56 (a)(2) Stmt. at 21. The Second Circuit has indicated that "[p]rotected activities include both formal and informal complaints to management, where the plaintiff has a good faith, reasonable belief that the underlying challenged actions of the employer violated [the ADA]." Stephan v. W. Irondequoit Cent. Sch. Dist., 769 F. Supp. 2d 104, 109 (W.D.N.Y. 2011), aff'd, 50 F. App'x 77 (2d Cir. 2011) (internal quotations omitted) (citing to Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999)).  Because there is evidence before the court to support a finding that Hopkins believed that the Funds were discriminating against her because of her disability, and because she complained based on this belief, she satisfies the first element.

The Funds also knew that Hopkins was engaging in this protected activity.  At the Trustees' Meeting, Burch-Minakan read a statement that indicated Hopkins and she were being discriminated against by the Funds.  Creane Aff.  at ¶ 13.  This evidence is sufficient to create a material question of fact as to whether the Funds had knowledge that Hopkins was engaging in a protected activity.

Hopkins has also put forth evidence that could establish that an adverse decision or course of action was taken against her.  The parties agree that she was removed from the Trustee's meeting.  Defs.' L.R. 56 (a)(1) Stmt. at ¶ 40; Pl.'s L.R. 56(a)(2) Stmt. at ¶ 40.  Hopkins has come forward with evidence that she was then suspended and

thereafter terminated.  Pl.'s L.R. 56 (a)(2) Stmt. at 21.  Both a suspension and a termination are adverse actions. See e.g. Morris, 196 F.3d 102, 110 (defining adverse action to include "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand").

Finally, Hopkins has come forward with sufficient evidence upon which a reasonable trier of fact could find a causal connection between her complaint at the meeting and her subsequent termination.  In establishing such a causal connection, the Second Circuit has indicated that "a close temporal relationship between a plaintiff's participation in protected activity and an employer's adverse actions can be sufficient to establish causation." Treglia, 313 F.3d 713 (finding temporal proximity sufficient for a prima facie case when employee fired a year after complaint, together with intervening action by employer.)  Here, Hopkins was suspended on March 25, 2010, and not allowed to work while the Funds investigated her claims.  Pl.'s L.R. 56 (a)(2) Stmt. at 21.  On March 30, 2010, she was told that she could not continue working at the Funds and that the Funds wanted her to retire.  Def.s' L.R. 56 (a)(1) Stmt. at ¶44.  Ultimately, she was terminated on June 18, 2010.  Pl.'s L.R. 56 (a)(2) Stmt. at 21.  This evidence—that she was told she could no longer work at the Funds five days after her complaint at the meeting, coupled with her termination three months later—is sufficient to allow a reasonable trier of fact to find a close temporal relationship between Hopkins' protected activity and the subsequent retaliation by the Funds.  See Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998) (two months between protected activity and allegedly adverse action sufficient to establish causation), abrogated in part on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002); Gorman-Bakos

v. Cornell Coop. Extension of Schenectady County, 252 F.3d 545, 55 (2d Cir. 2001) (holding that a period of four months provides "temporal proximity . . . sufficient to support an allegation of a causal connection strong enough to survive a summary judgment motion.").

    b.  Legitimate Non-Retaliatory Reason

  "Once a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision." Treglia, 313 F.3d 713, 721.  The Funds' reasons for its allegedly retaliatory actions are the same as those in the context of the discrimination action.  See Section (C)(1)(b), supra.  Once again, the Funds have put forth sufficient evidence of a legitimate non-retaliatory reason for the termination.

    c.  Pretext

  If a defendant is able to establish a legitimate non-retaliatory reason for the challenged employment decision, then "the plaintiff must point to evidence that would be sufficient to permit a rational fact finder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." Treglia, 313 F.3d 713, (quoting Cifra, 252 F.3d, 205, 216).  Hopkins' proffered evidence, viewed in the light most favorable to her, is a reasonable trier of fact could find that the Funds' reasons for termination were a pretext for impermissible retaliation.

  Hopkins has come forward with evidence that the poor performance the Funds complained of related to work that Hopkins was not supposed to do, or not given the support to do.  Pl.'s L.R. 56(a)(2) Stmt. at 20-21.  She also came forward with evidence that Pane intended to make her a "fall guy." Pl.'s L.R. 56(a)(2) Stmt. at 17.  Further, the close temporal proximity between her complaint on March 25, 2010, suspension the

same day, offer of retirement on March 03, 2010, and termination on June 18, 2010 all

suggest that the reasons given by the Funds are pretext.  Pl.'s L.R. 56 (a)(2) Stmt. at

21; Def.s' L.R. 56 (a)(1) Stmt. at ¶ 44.  Again, the evidence at this point must be viewed

in the light most favorable to Hopkins.  On her retaliation claim, Hopkins has put forth

sufficient evidence to raise genuine issues of material facts, <u>see</u> Fed. R. Civ. P. 56(c),

that only the finder of fact can properly decide.

      D.    <u>CFEPA Disability Claims Sounding in Discrimination and Retaliation</u>

      Discriminatory claims brought under CFEPA, Conn. Gen. Stat. § 46a-60 <u>et</u> <u>seq</u>.

are construed similarly to ADA claims, with Connecticut courts reviewing federal

precedent concerning employment discrimination and retaliation for guidance in

enforcing the CFEPA.  "Although this case is based solely on Connecticut law, we

review federal precedent concerning employment discrimination for guidance in

enforcing our own anti-discrimination statutes." <u>Levy v. Comm'n on Human Rights &</u>

<u>Opportunities</u>, 236 Conn. 96, 103 (1996); <u>see</u> <u>also</u> <u>Lovejoy-Wilson v. NOCO Motor Fuel,</u>

<u>Inc.</u>, 263 F.3d 208, 223 (2d Cir. 2001) (reviewing federal precedent, including the

burden-shifting framework, as a basis for analyzing CFEPA cases).  This is also true of

retaliation claims.  "The analysis of discrimination and retaliation claims under CFEPA is

the same as under Title VII." <u>Kaytor v. Electric Voat Corp.</u>, 609 F.3d 537, 556 (2d Cir.

2010) (citing to <u>Craine v. Trinity College</u>, 259 Conn. 625, 637 n.6 (2002)).

      The only relevant difference between the analysis a court undertakes in regards

to ADA and CFEPA claims is in defining physical disability.  "CFEPA's definition of

physical disability is broader than the ADA's." <u>Beason v. United Technologies</u>, 337 F.3d

271, 277-278 (2d Cir.2003).  Because the Funds have agreed that Hopkins was

disabled under the narrower ADA for purposes of summary judgment, Def. Mem. Of Law at 19, this difference does not affect the court's analysis of the CFEPA claims.

With regard to the CFEPA discriminatory and retaliation claims that relate to Hopkins' disability, the claims should survive summary judgment for the same reasons that the ADA discrimination and retaliation claims survived summary judgment.  See, Section (C), supra. The court, therefore, denies the Funds' Motion for Summary Judgment as to these state claims.

E.    Age Discrimination in Employment Act

The Funds have moved for summary judgment on Hopkins' causes of action under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.  Hopkins has alleged both discrimination and retaliation under the ADEA.  For the following reasons the court denies the Funds' Motion for Summary Judgment as it relates to Hopkins' claims under the ADEA.

1.    Discrimination Under the Age Discrimination in Employment Act

The ADEA provides that it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  The Second Circuit has indicated that ADEA claims are analyzed "under the same framework as claims brought pursuant to Title VII."  Schnabel v. Abramson, 232 F.3d 83, 87 (2d. Cir. 2000) (quoting Woroski v. Nashua Corp., 31 F.3d 105, 108 (2d Cir. 1994).  The Second Circuit has articulated the appropriate burden shifting standard to be employed:

> First, a plaintiff must establish a prima facie case of age discrimination . . .
> Once the plaintiff has made out a prima facie case, the employer is
> required to offer a legitimate, nondiscriminatory business rationale for its

19

actions . . . If the employer articulates such a reason, the plaintiff has the burden of proving that his age was the real reason for his discharge.

Id. (internal citations removed)

> a.   Prima Facie Case

The initial burden is on the plaintiff to establish a prima facie case.  In order to establish a prima facie case, "a plaintiff must show (1) that he was within the protected age group, (2) that he was qualified for the position, (3) that he was discharged, and (4) that the discharge occurred under circumstances giving rise to an inference of age discrimination." Schnabel, 232 F.3d 83, 87 (2d Cir. 2000) (citing to Woroski, 31 F.3d 105, 108).  It is important to note that, at this stage, the "burden of proof that must be met to establish a prima facie case is minimal." Id. (citing to Hollander v. American Cynamid Co., 172 F.3d 192, 199 (2d Cir. 1999).

Hopkins has put forth sufficient evidence to meet this minimal burden.  First, Hopkins was 62 when she was fired, which puts her within the protected age group. See 29 U.S.C. § 631(a) ("The prohibitions in this chapter shall be limited to individuals who are at last 40 years of age.").  Second, Hopkins has come forward with evidence that she was qualified for the position.  She worked at the firm for many years and has testified that she worked as well at the job after returning to work from her treatments. Pl.'s L.R. 56(a)(2)Stmt. at p. 15-16.  She has further come forward with evidence that after returning to work, she was qualified to work at the position.  Id.

Third, Hopkins was discharged, as she was terminated on June 18, 2010.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 54; Pl.'s L.R. 56(a)(2) Stmt. at ¶ 54.  Finally, the circumstances of her termination give rise to an inference of age discrimination.  Hopkins has testified that she was repeatedly questioned about when she was going to retire.  Hopkins Dep.

at p. 37. She was also replaced by Tardiff, who was more than 15 years younger than Hopkins. Defs'. Ex. A-5 (Doc. No. 62). This age difference has been found to be enough to establish a prima facie case. See Hollander, 172 F.3d 192, 199 (holding that replacement of employee within protected class by two others, one 11 years younger and one eight months younger, satisfied the fourth element of a prima facie case under the ADEA), abrogated on other grounds by Schnabel, 232 F.3d 83.

b.    Legitimate Non-Discriminatory Reason

Having established a prima facie case for age discrimination, the burden now shifts to the Funds to "produce evidence which, taken as true would permit the conclusion that there was a nondiscriminatory reason for the adverse action." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 136 (2d Cir. 2000) (citing St. Mary's Honor Ctr., 509 U.S. 509) (emphasis omitted).

The Funds' reasons for terminating Hopkins are the same as those discussed by this court in addressing Hopkins' ADA claims. See Section (C)(1)(b), supra. As such, the court adopts its reasoning from that section in concluding that the Funds have proffered sufficient evidence of a legitimate, non-discriminatory reason for the termination.

c.    Pretext

"Because defendants have articulated legitimate, nondiscriminatory reasons for having fired plaintiff, the burden shifts back to plaintiff to present sufficient evidence for a reasonable jury to conclude that [defendants] discriminated against him because of his age." Schnabel, 232 F.3d at 88, (citing Hollander, 172 F.3d 192, 200, abrogated on other grounds) (internal quotations removed). This means that "the final burden rests on the plaintiff to prove not only that the proffered nondiscriminatory reason was

21

pretextual but also that the defendant discriminated against the plaintiff."   Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 91 (2d Cir.2001); see also Reeves, 530 U.S. 133, 143 (2000).  Finally, "Gross makes clear that "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action" and not just a contributing or motivating factor."  Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010) (citing Gross v. FBL Financial Services, Inc., 557 U.S. 167, 180 (2009).  This must be done "either through direct, statistical or circumstantial evidence . . . ." Gallo, 22 F.3d 1219, 1225.

Hopkins has come forward with sufficient evidence for a reasonable trier of fact to find that, but-for her age, she would not have been terminated.  First, Hopkins has testified about a continuing course of conduct by Pane, in which course Pane repeatedly asks Hopkins about when Hopkins was going to retire, so much so that it rose to the level of badgering.  Pl.'s L.R. 56(a)(2) Stmt. at 14-16.  Hopkins has also testified that Pane referred to her as the Funds "institutional memory."  Id. at 15.  Pane apparently also spoke of Hopkins' "longevity" and her "many, many" years of service. Id.  Further, Hopkins was replaced by Tardiff, an employee who was more than 15 years her junior.  Defs. Ex. A-5.  Hopkins has also testified that Burch-Minakan was terminated based on her age and also replaced by a younger employee.  Pl.'s L.R. 56 (a)(2) Stmt. at 14.  Further, Hopkins indicated that Pane told her that Hopkins was going to be a "fall guy" for the audit, which, if taken as true, would support a jury finding that the Funds' reasons for termination were pretextual.  Pl.'s L.R. 56 (a)(2) Stmt. at 17; see also Section IV(C)(1)(c), supra (stating that she was inter alia not assigned to work on

22

tasks the Funds claimed she was supposed to be, and that she was not given resources in order to succeed).  This evidence is sufficient for a reasonable jury to find both that the Funds' claimed reasons were false and "that age was the 'but-for' cause of the challenged adverse employment action." Gross, 557 U.S. at 180.

For the reasons stated above, the Funds' Motion for Summary Judgment is denied as to Hopkins' claim of discrimination under the ADEA.

2.      Retaliation Under the Age Discrimination in Employment Act

Retaliation under the ADEA is analyzed using "the familiar three-part burden shifting analysis. . . ."  Slattery, 248 F.3d 87, 94; see also, Wanamaker v. Columbian Rope Co., 108 F.3d 462, 465 (2d Cir. 1997) (retaliation claims brought under ADEA follow same allocations of burdens of proof as Title VII claims).

a.      Prima Facie Case

The court's first step is to determine whether Hopkins has established a prima facie case of retaliation.  "In order to make out a prima facie case of retaliation, a plaintiff must show by a preponderance of the evidence [1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action."  Slattery, 248 F.3d 87, 94 (citing to Holt v. KMI-Continental, Inc., 95 F.3d 123, 130 (2d Cir. 1996).  Hopkins has brought forth sufficient evidence to make out such a prima facie case.

First, Hopkins has testified that she, together with Burch-Minakan, complained about discrimination at the March Trustees Meeting.  Pl.'s L.R. 56(a)(2) Stmt. at 21. The Second Circuit has indicated that "[p]rotected activities include both formal and informal complaints to management, where the plaintiff has a good faith, reasonable

23

belief, that the underlying challenged actions of the employer violated [the ADA]." Stephan v. W. Irondequoit Cent. Sch. Dist. , 769 F. Supp. 2d 104, 109 (W.D.N.Y. 2011) aff'd, 50 F. App'x 77 (2d Cir. 2011) (internal quotations removed) (citing to Sarno, 183 F.3d 155). There is evidence that this activity was known to the Funds. Pl.'s L.R. 56(a)(2) Stmt. at 21. The Funds put Hopkins on suspension the same day as the complaint, and subsequently terminated her, a clearly adverse action. Id.; see e.g. Morris, 196 F.3d 102, 110 (defining adverse action to include "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand"). Finally, the close temporal proximity between the complaint, suspension, offers of retirement, and subsequent termination—as outlined by the court above, see Section (C)(2)(a), supra— all indicate that a causal connection existed between the complaint and the adverse action. This decision is further informed by the fact that "the burden that must be met by an employment discrimination plaintiff to survive a summary judgment motion at the prima facie stage is de minim[i]s." Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d. Cir. 1994) (alterations in original) (internal quotation marks omitted); see also Slattery, 248 F.3d 87, 94.

### b.      Legitimate Non-Discriminatory Reason

"Once the plaintiff has established a prima facie case, a defendant must proffer a legitimate, non-discriminatory reason for the adverse action." Slattery, 248 F.3d 87, 94-95. The court adopts its analysis above that the Funds have proffered enough evidence that a reasonable finder of fact could determine that the Funds terminated Hopkins for a legitimate non-discriminatory reason. See Section IV(C)(2)(b), supra.

c.      Pretext

Under this framework, because the Funds have asserted a legitimate non-discriminatory reason, "the burden shifts back to the plaintiff to demonstrate pretext." Slattery, 248 F.3d at 95.  Here, Hopkins has proffered enough evidence that a reasonable finder of fact could determine that the reasons the Funds offered for Hopkins' termination were pretext.

First, as stated above, the temporal proximity between the Board of Trustee's meeting where Hopkins complained and her subsequent suspension, offers of retirement, and firing indicates a potential pretext. See, Section IV(C)(2)(c) supra. Hopkins has also alleged that she was told that she would be made a "fall guy".  Pl.'s L.R. 56(a)(2) Stmt. at 17.  Finally, Hopkins' testimony, taken as true, indicates that her job did not include many of the responsibilities that the Funds claim she was deficient in performing.  Pl.'s L.R. 56(a)(2) Stmt. at 21.  All of this could be a basis for a reasonable trier of fact to find that the reasons the Funds gave for Hopkins' termination were merely a pretext for a retaliatory reason, and that there was a causal connection between Hopkins' protected activity and her firing.  At this stage, Hopkins has put forward sufficient material facts to defeat summary judgment.  Therefore, the Funds' Motion for Summary Judgment as to retaliation under the ADEA is denied.

F.      CFEPA Age Claims Sounding in Discrimination and Retaliation

CFEPA claims dealing with age are also analyzed according to corresponding federal precedent.  "The analysis of discrimination and retaliation claims under CFEPA is the same as under Title VII."  Kaytor, 609 F.3d 537, 556 (citing to Craine, 259 Conn. 625, 637 n.6.  "Although this case is based solely on Connecticut law, we review federal precedent concerning employment discrimination for guidance in enforcing our own

anti-discrimination statutes." <u>Levy v. Comm'n on Human Rights & Opportunities</u>, 236 Conn. 96, 103 (1996); <u>see also</u>, <u>Lovejoy-Wilson v. NOCO Motor Fuel, Inc.</u>, 263 F.3d 208, 223 (2d Cir. 2001) (reviewing federal precedent, including the burden-shifting framework, as a basis for analyzing CFEPA cases).

Because claims of age related discrimination and retaliation are analyzed in the same manner under the CFEPA as under Title VII and the ADA, the court adopts its analysis from the related ADA analysis. <u>See</u> Section IV(E), <u>supra</u>.

The parties differ over whether the CFEPA requires a lower standard of proof to prove age discrimination then the ADEA does. Pl.'s Mem. at 31-35; Defs.' Mem. at 20-25. Because the court has concluded Hopkins has come forward with evidence upon which a reasonable trier of fact could find that Hopkins has proven the threshold for an ADEA claim, the standard for the CFEPA claim is met as well. Neither party argues that the CFEPA standard is higher than the ADEA standard, and this court concludes there is no need to decide whether the CFEPA standard is actually lower than that of the ADEA in reaching a decision in this case.

The court denies the Funds' Motion for Summary Judgment as it applies to Hopkins' claims of age based discrimination and retaliation under the CFEPA for the reasons stated above.

G.     Intentional Infliction of Emotional Distress

Count Two of Hopkins' Complaint sounds in state common law intentional infliction of emotional distress. In order to establish a claim for intentional infliction of emotional distress under Connecticut law, a plaintiff must establish four elements:

(1) that the actor intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of its conduct, (2) that the conduct was extreme and outrageous, (3) that the defendant's

conduct was the cause of the plaintiff's distress, and (4) that the emotional distress sustained by the plaintiff was severe.

Duse v. Int'l Bus. Machines Corp., 252 F.3d 151, 156 (2d Cir. 2001); see, also, Appleton v. Bd. Of Educ. Of the Town of Stonington, 254 Conn. 205, 210 (2000).  Whether the Funds' conduct is sufficient to satisfy these elements is, in the first instance, a question of law for the court to decide.  Johnson v. Chesebrough-Pond's USA Co., 918 F.Supp. 543, 552 (D.Conn.), aff'd, 104 F.3d 355 (2d.Cir.1996).

"To show extreme and outrageous conduct, a plaintiff must prove that defendant's conduct go[es] beyond all possible bounds of decency, [is] regarded as atrocious, and [is] utterly intolerable in a civilized community."  Lavoie, 361 F. App'x 06, 208 (quoting Appleton, 254 Conn. at 210) (internal quotations removed).  "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!"  Tracy v. New Milford Pub. Sch., 101 Conn. App. 560, 570 (2007).  "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress."  Carnemolla v. Walsh, 75 Conn. App. 319, 332 (2003) (quoting Appleton, 254 Conn. 205, 210-11) (internal quotations omitted).

When dealing with employment law matters, "it is the employer's conduct, not the motive behind the conduct, that must be extreme or outrageous.  An employer's adverse yet routine employment action, even if improperly motivated, does not constitute extreme and outrageous behavior when the employer does not conduct that action in an egregious and oppressive manner."  Miner, 126 F.Supp. 2d 184, 195 (internal citations removed).  "In addition to routine employment actions, Connecticut

courts hold that insults, verbal taunts, threats, indignities, annoyances, petty

oppressions or conduct that displays bad manners or results in hurt feelings do not

support a claim for intentional infliction of emotional distress." Id.; see also, e.g., Taylor

v. Maxxim Medical, Inc., 2000 WL 630918 at *3 (D. Conn. 2000).

      Here the court concludes that, even when viewed in the light most favorable to

Hopkins, the Funds' behavior was not "extreme or outrageous" as a matter of law.  At

most, they rise to the level of insults and taunts that have not been found to be enough

to establish, as a matter of law, a claim of intentional infliction of emotional distress.  Id.

      Hopkins bases her claim on the totality of the comments made by Pane as well

as her termination.  Neither of these bases amounts to the type of extreme or

outrageous behavior required in a claim for intentional infliction of emotional distress.

See  Appleton, 254 Conn. 205 (conduct not outrageous where supervisors made

condescending comments about plaintiff in front of colleagues, subjected her to two

psychiatric examination, telephoned her daughter to say plaintiff was acting differently

and should take time off, asked police to escort her from school and suspended her

employment); Hill v. Pinkerton Security & Investigation Services, Inc., 977 F. Supp. 148

(D.Conn.1997) (paying plaintiff, an African-American female, less money than her

counterparts and disciplining, reprimanding, and transferring plaintiff to two other

locations in response to her wage investigation not extreme or outrageous); White v.

Martin, 23 F.Supp.2d 203 (D.Conn. 1998), aff'd, 198 F.3d 235 (2d.Cir. 1999)

(employer's alleged discrimination, denial of promotion, discipline, and harassment

based on plaintiff's gender not extreme or outrageous); Tracy, 101 Conn. App. 560, at

567-571 (conduct not outrageous where supervisor conspired with superintendent in

pattern of harassment including denial of position, initiating disciplinary actions without proper investigation, defamation of character and intimidation).

These cases make it clear that the comments made by Pane and the circumstances of Hopkins' termination do not rise to the level of "extreme or outrageous" conduct.  As such, the Funds' Motion for Summary Judgment as to Count Two is granted.

  H. <u>Mitigation of Damages</u>

Finally, the Funds move for summary judgment as to whether Hopkins mitigated her damages.  "Victims of employment discrimination are required to mitigate their damages."  <u>Greenway</u>, 143 F.3d 47, 53.  While an employee must "use reasonable diligence in finding other suitable employment," <u>id.</u>, it is the employer who must prove "(1) that suitable work existed, and (2) that the employee did not make reasonable efforts to obtain it."  <u>Broadnax v. New Haven</u>, 415 F.3d 265, 268, 270 (2d Cir. 2005) (citing to <u>Greenway</u>, 143 F.3d 47).  The employer need not "establish the availability of comparable employment," however, in cases where the employer "can prove that the employee made no reasonable efforts to seek such employment."  <u>Greenway</u>, 143 F.3d, at 54.  Because the CFEPA is analyzed in the same manner as Title VII cases,[6] it follows that the <u>Greenway</u> rule would also be applicable as to mitigation of damages in cases brought under the CFEPA.

The Funds argue that Hopkins has made no reasonable effort to seek other employment.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 59.  They base this argument on the undisputed fact that Hopkins retired rather than seek any employment after being

---

[6] "The analysis of discrimination and retaliation claims under CFEPA is the same as under Title VII."  <u>Kaytor</u>, 609 F.3d 537, 556 (citing to <u>Craine</u>, 259 Conn. 625, 637 n.6).

terminated by the Funds.  Pl.'s L.R. 56(a)(2) Stmt. at 21-22.  In response to the Funds'

argument, Hopkins has merely offered evidence that she mitigated her damages by

seeking Social Security benefits and receiving her pension.  Id. at ¶ 59.  This does not,

however, satisfy the requirement for mitigation in employment cases.  Greenway makes

clear that, in the Second Circuit, a plaintiff must "use reasonable diligence in finding

other suitable employment."  Greenway, 143 F.3d 47, 53.  In no way can social security

and pension payments be construed to be "employment."  Hopkins has not come

forward with any evidence that would tend to show she made any efforts to seek other

employment following her termination.

Because she has not "sought" any employment, Hopkins has not mitigated her

damages.  Therefore, because there are no issues of material fact as to whether

Hopkins mitigated her economic damages, the court will grant the Funds' Motion for

Summary Judgment on its special defense of failure to mitigate, thus preventing

Hopkins' recovery of front and back pay.  The court notes, however, that Greenway

does not extend to emotional distress or punitive damages.  Greenway, 143 F.3d 47, 56

("For the foregoing reasons, the judgment appealed from insofar as it fixed defendant's

liability and punitive damages is affirmed.").  Thus, Hopkins may seek to recover those

damages as appropriate to the surviving causes of action.

## V.      CONCLUSION

For the foregoing reasons, the Funds' Motion for Summary Judgment is

GRANTED in part and DENIED in part.  Hopkins' remaining causes of action are her

claims of discrimination and retaliation under the ADA and CFEPA, and her claims of

discrimination and retaliation under the ADEA and CFEPA.  Pursuant to these actions,

she may seek to recover punitive damages, damages based on emotional distress, and

attorney's fees, but any compensatory damages resulting from loss of front or back pay are barred by Hopkins' failure to mitigate.

**SO ORDERED.**

Dated at New Haven, Connecticut this 25th day of November, 2013.

_____/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge